2019V00591/BAW/ml
CRAIG CARPENITO
UNITED STATES ATTORNEY
BY:  BARBARA A. WARD
ASSISTANT UNITED STATES ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY 07102
TEL:  (973) 645-2700
barbara.ward@usdoj.gov

UNITED STATE DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Hon. |
| - v. - | : | Civil Action No. 19- |
| **$31,880 IN UNITED STATES CURRENCY,** | : | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| **Defendant *in rem*.** | : | |
| | : | |

Plaintiff United States of America, by its attorney, Craig Carpenito, United States Attorney for the District of New Jersey, for its verified complaint, alleges upon information and belief as follows, in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure.

### I.    NATURE OF THE ACTION

1. The United States of America brings this action to seek the forfeiture of approximately $31,880 in United States currency seized from Donovan Munroe, Jr. on or about June 26, 2019 at Newark Liberty International Airport (hereinafter referred to as the "Defendant in rem" or the "defendant property").


2.      The Defendant in rem is subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6), which subjects to forfeiture all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I, of the United States Code, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of Title 21, Subchapter I, of the United States Code.

## II.  JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.      Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the District of New Jersey, and pursuant to 28 U.S.C. § 1395(a), because the defendant property was seized in the District of New Jersey.

5.      The Defendant in rem is being held on deposit in the United States Marshals Service's Seized Assets Deposit Fund at the Federal Reserve Bank, New York, New York.

6.      Upon the filing of this Verified Complaint for Forfeiture In Rem, the Plaintiff requests that the Clerk of the Court issue a Warrant of Arrest In Rem pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure (the "Supplemental Rules"), which the plaintiff will execute upon the defendant

property pursuant to 28 U.S.C. § 1355(d) and Rule G(3)(c) of the Supplemental Rules.

### III.  FACTS

7. Narcotics traffickers and drug money couriers commonly transport large amounts of currency from Newark Liberty International Airport ("Newark Airport") to San Francisco, California and the surrounding area, either on their person or in their carry-on or checked luggage.

8. In recent years, U.S. Drug Enforcement Administration ("DEA") task forces assigned to Newark Airport have made numerous seizures of narcotics-related currency from individuals flying from Newark Airport to the San Francisco area.

9. On or about June 26, 2019, at approximately 11:45 a.m., agents and task force officers assigned to the DEA Newark Airport Group/Task Force 3 (hereinafter, "Task Force members") were at Gate 134 of Terminal C monitoring passengers scheduled to board United Airlines flight #2080 to San Francisco, with a transfer from San Francisco to a final destination of Arcata-Eureka, Humboldt County, California.  The monitoring of passengers flying to this destination has led to several seizures of drug money in the past.

10. The Task Force members observed a male passenger with carry-on luggage in the jet-way, later identified as Donovan Munroe, Jr. ("Munroe") in the process of boarding the flight.  The Task Force members identified themselves to Munroe, who agreed to speak with them.  Munroe provided the Task Force members with his boarding pass and New Jersey driver's license.

11.    The Task Force members asked Munroe for the purpose of his trip and whether he was in possession of large amounts of U.S. currency. Munroe stated that he was in possession of only $20,000 and that he was flying for both business and pleasure. He said he was going to see his brother and drop off clothes and sneakers to him, which were in a separate tote bag. Munroe said his brother was downtrodden and lived in Blue Lake, California, which is in the area near Arcata.

12.    Munroe then went into his carry-on, pulled out a green toiletry bag, and handed it to the Task Force members. Inside the bag was a manila envelope containing U.S. currency. Task Force members asked Munroe if they could inspect his carry-on, and Munroe agreed.

13.    Task Force members inspected Munroe's carry-on and discovered a large amount of U.S. currency that was rubber-banded together in stacks inside another manila envelope. In addition, U.S. currency folded in half and wrapped in rubber bands was found in the zipper compartment of the bag. The bag also contained a pair of sneakers and one change of clothes.

14.    Munroe stated that the cash was saved over time, and was withdrawn over time from a bank or credit union, but not contemporaneously with the flight.

15.    Munroe would not explain what he was going to do with the U.S. currency, but stated that all of the U.S. currency belonged to him.

16.    Munroe further stated that he has flown to Orlando with U.S. currency and did not understand what the problem was.

17. Munroe also said that he owned Total Expert Cleaning, LLC in Rockaway, New Jersey. From his carry-on bag, Munroe produced a certified copy of the Certificate of Formation of Total Expert Cleaning as a New Jersey Limited Liability Company on September 19, 2018. The Certificate of Formation showed that Munroe was the registered agent for and the single member of the company. Munroe was also carrying a notice from the Internal Revenue Service dated October 12, 2018 assigning an Employer Identification Number (EIN) to Total Expert Cleaning LLC.

18. Munroe also said that he had his tax returns with him to prove that the money was his. Munroe produced several tax related documents, including a copy of his 2018 Form 1040 on which Munroe declared his occupation as "janitor." Monroe also had a 2018 IRS Form 1099-MISC showing payment to Munroe of $32,607.54 by Expert Property Services, Inc., P.O. Box 394, Boonton, New Jersey.

19. Sometime later, Munroe's attorney provided the U.S. Attorney's Office with two pages from a copy of Munroe's 2018 federal tax return—(i) a Schedule C for Munroe's company, Total Expert Cleaning LLC; and (ii) the second page of Form 1040. On Schedule C, Munroe reported a gross business income $35,056 and a net profit of $11,235. On Form 1040, Munroe reported an adjusted gross income of approximately $10,440 and taxable income of $0. After deductions and credits (*i.e.*, the Earned Income Credit and the Additional Child Tax Credit), Munroe was entitled to a payment of $3,064 from the IRS. According

to a note on the tax documents Munroe showed the Task Force members at the airport, Munroe also received $1,281 from the New Jersey Division of Taxation.

20.     Munroe also showed the Task Force members a notebook that included names and numbers. In the experience of the Task Force members, the notebook was consistent with a ledger used to record narcotics transactions. Task Force members asked Munroe if the notebook was a ledger, but Munroe did not answer.

21.     Task Force members advised Munroe that the U.S. currency was being administratively seized as suspected narcotics proceeds. Munroe then stated that he thought he was allowed to carry a maximum of $10,000.

22.     The Task Force members asked Munroe to sign the bag that contained the money and to confirm that the money was his. Munroe stated again that the money belonged to him.

23.     About an hour after the Task Force members initiated the conversation with Munroe, a police officer with the Port Authority of New York and New Jersey Police Department ("PAPD") K-9 Unit deployed a K-9 team to screen the evidence bag containing the currency seized from Munroe's luggage. Certified Narcotics Detection K-9 "Ares" signaled, through a distinctive set of behaviors, that he detected the odor of a controlled substance on the defendant currency.

24.     Ares was certified in narcotics detection on or about February 15, 2019 after successfully completing a 13-week course given by the PAPD K-9 Unit. Ares was trained to detect the odors of five controlled substances: marijuana,

cocaine, heroin, MDMA (commonly known as ecstasy), and methamphetamine. In the course of this training, Ares and his handler were involved in more than 200 searches for the above-listed substances in locations unknown to both the K-9 and the handler.

25.     Ares and his handler were also trained in the detection of the odor of a controlled substance on currency. Ares was trained to distinguish between uncirculated currency and currency that was recently commingled with one of the five controlled substances Ares is trained to detect. Ares received a K-9 Certification of Detection of Narcotic Tainted Currency.

26.     The PAPD requires that its K-9 teams be re-tested and re-certified biannually. The PAPD also requires that its K-9 teams complete a required amount of training exercises each month to maintain their skills.

27.     It was subsequently determined that the U.S. currency seized from Munroe's luggage (*i.e.*, the defendant property) totaled $31,880. The currency was in the following denominations:

(a)     Five (5) $1 bills;
(b)     Five (5) $5 bills;
(c)     Forty-three (43) $10 bills;
(d)     One thousand and ninety-one (1,091) $20 bills;
(e)     Fifty-two (52) $50 bills; and
(f)     Seventy (70) $100 bills.

28.     The prevalence of $20 bills is consistent with the denominations most frequently seized in narcotics trafficking cases.

29.     In 2007, Munroe was convicted by a jury in Tennessee of attempted second-degree murder, possession of 0.5 grams or more of cocaine with the intent to sell, possession of oxycodone with the intent to sell, and maintaining a

dwelling where drugs are sold. He was sentenced to 12 years' imprisonment on the murder charge and sentences of eight, three, and two years, respectively, on the drug charges. Munroe was also convicted in Virginia for possession with intent to manufacture and/or sell controlled substances.

30. Munroe's convictions arose out a series of events that occurred on July 31, 2006 and August 1, 2006 in Bristol, Tennessee and Bristol, Virginia, which are "twin cities" located on the Tennessee-Virginia state line.

31. On July 31, 2006, Munroe, who was living in Bristol, Tennessee, accused a houseguest of stealing money from him. Munroe shot the houseguest in the back and drove away

32. Police executed two search warrants at Munroe's residence and seized baggies containing cocaine, oxycodone pills, a scale, money, a Glock handgun, and a .40 caliber shell casing.

33. Later that evening, the police arrested Munroe at his residence. Incident to arrest, they found a key for a motel room in Bristol, Virginia.

34. Police searched the motel room in Bristol, Virginia pursuant to a search warrant. They found 120 grams of cocaine, $13,000 in cash, Munroe's driver's license, and a .40 caliber Glock handgun. These items were the basis of Munroe's conviction in Virginia for possession with intent to manufacture and/or sell controlled substances.

35. Munroe was released from prison on or about February 21, 2017.

36. The DEA initiated administrative forfeiture proceedings against the defendant property. On or about July 30, 2019, Munroe, through counsel, filed

a claim with the DEA contesting the forfeiture of the defendant property. The claim consisted of a "Certification" signed by Munroe under penalty of perjury stating that he was the owner of the defendant property.

37. The claim form utilized by the DEA allows the claimant to submit documents in support of the claimant's interest in the seized property. Munroe's claim included statements of an account in his name at Affinity Federal Credit Union for the period from December 2017 to June 2019. According to an analysis of the statements by another law enforcement officer, the account activity is not consistent with the operation of a small, local cleaning business.

38. According to records obtained from Alaska Airlines for the period from June 2018 to October 2019, Munroe flew on Alaska Airlines from Newark to San Francisco and back again on approximately five occasions, with each trip lasting no more than three days. In the experience of the DEA, this route and the brevity of the trip is consistent with the transportation by courier of narcotics and narcotics proceeds. Humboldt, Mendocino, and Trinity Counties in Northern California have been called the "Emerald Triangle" because the illegal growing and production of cannabis has been widespread in the area for decades.

39. The credit union statements provided by Munroe show that in the one-year period from June 2018 to June 2019, Munroe spent more than $6,900 on airfare with United, American, and Delta Airlines and CheapOair, a travel booking site that allows users to search multiple airlines simultaneously to find the best fare. This approximately $6,900 is in addition to approximately $1,747 in charges with Alaska Airlines.

40. The credit union statements provided by Munroe also show charges made in the San Francisco area within a few days after some of the airline tickets were purchased, which shows that at least three of the trips on airlines other than Alaska Airlines were to the San Francisco area. For example:

    (a) On October 9, 2018, United Airlines made two charges totaling $565.40 ($344.20 and $221.20) to Munroe's account. On October 13, Munroe account card was used to make a $502.36 point of sale purchase at Berdel's, a men's clothing and skate shop store in Santa Cruz, California, which is about 80 miles south of San Francisco.

    (b) An $832.40 charge from United Airlines on November 20, 2018 was followed by a November 23 charge for a rental car in San Francisco.

    (c) A December 20, 2018 charge for $692.60 from American Airlines was followed by a charge on December 22 for a rental car in San Francisco.

## IV. CLAIM FOR FORFEITURE

41. The allegations contained in paragraphs 1 through 40 of this Verified Complaint for Forfeiture In Rem are realleged and incorporated herein as if set forth in full.

42. Based on the facts set forth above, there is probable cause to believe that the defendant property was furnished or was intended to be furnished in exchange for a controlled substance or represents proceeds traceable to such an exchange or was used or intended to be used to facilitate any violation of Title II of the Controlled Substance Act, 21 U.S.C. § 801, *et seq.*, and is therefore forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

**WHEREFORE**, plaintiff requests that the Clerk of the Court issue a warrant for the arrest in rem and seizure of the defendant property; that notice

of this action be given to all persons who reasonably appear to be potential claimants in the defendant property; that the defendant property be forfeited and condemned to the United States of America; that plaintiff be awarded its costs and disbursements in this action; and that the Court award such other and further relief as it deems proper and just.

Dated: January 28, 2020

                                          CRAIG CARPENITO
                                          United States Attorney

                                          *s/Barbara A. Ward*
                                          By: Barbara A. Ward
                                          Assistant United States Attorney

## **VERIFICATION**

I, Alexis M. Melendez, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the U.S. Drug Enforcement Administration, and in that capacity have responsibility for this action; that I have read the foregoing Verified Complaint and know the contents thereof; and that the same is true to the best of my own knowledge, information, and belief.

The sources of my knowledge and the grounds of my belief include the official files and records of the United States, the State of New Jersey, the State of Tennessee, and the Commonwealth of Virginia; information obtained directly by me; and information supplied to me from and by other law enforcement officials, during an investigation of alleged violations of Title 21 of the United States Code.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated this 28th day of January, 2020.

_____
Alexis M. Melendez
Task Force Officer
Drug Enforcement Administration

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$31,880.00 in United States Currency

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Barbara A. Ward, Assistant U.S. Attorney
United States Attorney's Office, 970 Broad St., Suite 700
Newark, New Jersey 07102    Tel.: (973) 645-2825

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. 881
Brief description of cause:
Forfeiture of property related to controlled substances offenses

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                          DOCKET NUMBER

DATE: 01/28/2020
SIGNATURE OF ATTORNEY OF RECORD: /s/ Barbara A. Ward

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

2019V00591/BAW/ml
CRAIG CARPENITO
UNITED STATES ATTORNEY
BY:  BARBARA A. WARD
ASSISTANT UNITED STATES ATTORNEY
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY 07102
TEL:  (973) 645-2700
barbara.ward@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Hon. |
| Plaintiff, | : | Civil Action No. 19- |
| v. | : | |
| **$31,880.00 IN UNITED STATES CURRENCY,** | : | **WARRANT FOR ARREST** *IN REM* |
| | : | |
| Defendant *in rem.* | | |

**TO ANY OFFICER OF THE UNITED STATES DEPARTMENT OF JUSTICE, THE FEDERAL BUREAU OF INVESTIGATION, AND/OR ANY OTHER DULY AUTHORIZED LAW ENFORCEMENT OFFICER:**

WHEREAS, a Verified Complaint for Forfeiture *in Rem* has been filed on January 28, 2020 in the United States District Court for the District of New Jersey, alleging that the defendant property, namely $31,880.00 in United States Currency, is subject to seizure and forfeiture to the United States for the reasons set forth in the Complaint;

WHEREAS, the defendant property is currently in the possession, custody, or control of the United States;

WHEREAS, in these circumstances, Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure (the "Supplemental Rules"), directs the Clerk of the Court to issue a Warrant for Arrest *in Rem* for the defendant property; and

WHEREAS, Rule G(3)(c)(i) of the Supplemental Rules provides that the Warrant for Arrest *in Rem* must be delivered to a person or organization authorized to execute it, who may be an agent with the United States Department of Justice or any other United States officer or employee; someone under contract with the United States; or someone specially appointed by the court for that purpose.

YOU ARE, THEREFORE, HEREBY COMMANDED to take such steps as are necessary to arrest and detain the defendant property, including, if appropriate, serving a copy of this warrant on the custodian in whose possession, custody, or control the property is currently found; and

YOU ARE FURTHER COMMANDED to use whatever means may be appropriate to protect and maintain the defendant property in your custody until further order of this Court.

IN WITNESS WHEREOF, I, the Clerk of the United States District Court for the District of New Jersey, have caused the foregoing Warrant for Arrest *In Rem* to be issued pursuant to Rule G(3)(b)(i) of the Supplemental Rules.

Dated: _____        _____
                                                    Clerk of the Court

                            By:   _____
                                                    Deputy Clerk